WILLIAM F. MURPHY, ADMINISTRATOR, *vs.*
THE TOWN OF NORFOLK.

First Judicial District, Hartford, March Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, JS.

Under the Good Roads Act and its amendments (General Statutes, §§ 1479, 1481, 1486, 1515), the State alone is responsible for the maintenance and repair of so-called State highways and State-aided highways, and assumes liability for injuries thereon due to the neglect of its representative, the highway commissioner, to make them reasonably safe for public travel. This legislation accords with the ancient and well-settled policy of the State (General Statutes, §§ 1407, 1414), of making the municipality or other corporation which is responsible for maintaining and repairing highways, liable in damages for injuries caused by its neglect to discharge that duty.

Argued March 2d—decided May 7th, 1920.

ACTION to recover damages for personal injuries to the plaintiff's intestate resulting in her death and alleged to have been caused by the defendant's negligence, brought to the Superior Court in Litchfield County and tried to the jury before *Kellogg, J.;* the trial court directed a verdict for the defendant, and from the judgment thereon the plaintiff appealed. *No error.*

The following facts were in evidence and undisputed: On August 13th, 1916, plaintiff's intestate was injured while riding in a motor-car on the so-called Torrington or Litchfield road running south from the town of Norfolk. The highway at the place where the injuries were suffered had been constructed in accordance with the Good Roads Acts (General Statutes §§ 1479, 1481), under a contract between the contractor and the State Highway Commissioner, and pursuant to a vote of the Town of Norfolk applying for State aid in the construction of that part of the highway. The State paid the contractor for its construction, and was later reimbursed by the town to the extent of one quarter of the cost. Since that part of the highway was completed it has been kept in repair by the State Highway Commissioner, and the town has repaid one quarter of the cost of such repairs, for which monthly bills have been rendered by the State to the town. The highway was not a part of the Trunk Line System of State highways. There was no railing on the side of the roadway at the place in question. The complaint alleges that the injury and death of the plaintiff's intestate was caused by the negligence of the town of Norfolk, in that it failed to maintain a railing along the roadway at a place where it was raised above the adjoining ground, as required by § 1413, and because the highway was defective in that loose stones were laid along the side of the roadway, one or more of which gave way and allowed the car in which the plaintiff's intestate was riding to slide and roll down an embankment. The trial court directed the jury to return a verdict for the defendant, on the ground that under the statutes the town was not bound to maintain or keep in repair a State-aided highway, and therefore was not liable in damages for injuries due to the defective condition of such a highway.

*Walter Holcomb* and *Thomas J. Wall,* for the appellant (plaintiff).

*Samuel A. Herman,* for the appellee (defendant).

BEACH, J. The only question is whether the court erred in directing a verdict for the defendant. That depends on the construction of the statutes concerning liability for defective highways with especial reference to State-aided highways, or, as they are also called in the statutes, State highways. Section 1407 requires towns, within their limits, to build and repair all necessary highways and bridges, "except where such duty belongs to some particular person." Under § 1414 any person injured in person or property by means of a defective road or bridge may recover damages "from the party bound to keep it in repair," on complying with stated conditions as to notice. These are ancient statutes. See page 17, Acts and Laws, 1784. At that time the liability for injuries suffered by means of a defect in the highway was expressed as follows: "The town or person through whose neglect such hurt is done, shall pay to the party so hurt or wounded, double damages." In *Goshen and Sharon Turnpike Co.* v. *Sears,* 7 Conn. 86, it was held that an action might be maintained against a turnpike company which, by accepting its charter and constructing its turnpike, had become bound to repair the same, although neither the charter of the company nor any statute, other than those above referred to, expressly imposed such a liability for damages on it. Conversely it was held in *Lavigne* v. *New Haven,* 75 Conn. 693, 55 Atl. 569, that § 1414, then § 2020 of the General Statutes of 1902, did not authorize an action against a town based upon a defect in that part of a highway which the street railway company was bound to keep in repair. These cases rest upon the reasonable proposition that

the duty of repair carries with it the liability to respond in damages for a neglect of that duty, or, as the old statute has it, that the liability rests on the town or person through whose neglect such hurt is done.

Turning now to the statutes concerning State highways, we find that by § 1486 the duty of keeping such highways in repair is expressly imposed on the State Highway Commissioner, who is required to "make whatever repairs are in his judgment necessary." By these words he is not only required to execute the repairs, but to determine their necessity, character and amount. According to the ancient policy of the State this would seem to require the conclusion that the Commissioner was the person liable in damages for a neglect of the duty of repair.

Nevertheless, the plaintiff points to another provision of § 1486 which requires the Highway Commissioner to present to the town a statement of the cost of repairs on State highways, and requires the town, in accordance with the Commissioner's certificate of expense, to "reimburse the State to the extent of one-fourth of the cost of such repairs." The word " reimburse " indicates—and the fact is so—that by these statutes it was not intended entirely to relieve the town from the obligation of paying for repairs on State-aided highways. To the extent of one quarter of their cost the State advances money for the town in paying for such repairs. The plaintiff claims that the obligation to pay for, or to contribute to, the cost of repairs, is the same thing as the obligation to keep in repair; that the Highway Commissioner, in making the repairs is acting as the agent of the town, and that the town performs or neglects its duty according as its agent does or does not keep the highway in a reasonably safe condition for the traffic which it is expected to bear.

We think the statutes forbid the acceptance of these

propositions. The Commissioner is the representative of the State, which for its own reasons has taken the entire control of the repairs of State highways away from the towns and put it into the hands of its own agent. The towns have no authority over the Commissioner; but, on the other hand, his discretion and judgment control the towns. In the matter of initiating, directing and executing repairs, he is their superior rather than their agent. And, as if to emphasize that fact, the statute provides that he "shall have the right to enter any town in which the State has constructed any road and make whatever repairs are in his judgment necessary."

It is entirely reasonable and proper that the Commissioner should be held liable for injuries caused by a neglect to repair such highways, and not the town which has nothing to do with such repairs except to pay one quarter of their cost.

The State, in recognition of its ancient policy, has by § 1515 consented that its agent may be sued. It is said that because this section is printed in the chapter entitled "Trunk Line System," it does not relate to State highways. But the subtitle of the section in question is "Damages for injuries sustained on State Highways," and its language authorizes an action against the Highway Commissioner for injuries sustained "by means of a defective road or bridge which it is the duty of the state highway commissioner to keep in repair, or by reason of the want of any railing or fence on the side of such bridge or part of such road so raised above the adjoining ground as to be unsafe for travel, which railing or fence it is the duty of said highway commissioner to erect and maintain."

There is no error.

In this opinion the other judges concurred.